UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

SHAWN A. JACKSON,
                Petitioner,

                -vs-                      MEMORANDUM   OF LAW
                                                        05-CV-0571A

JAMES T. CONWAY,
                Respondent.

_____

*NATURE OF THE CASE*

After interviews with the petitioner's two sons, his wife, his ex-wife, and his fourteen year old daughter, police charged the petitioner with assaults and numerous sexual crimes. He was subsequently indicted, in a 48 count indictment, including Sodomy in the First Degree, Attempted Sodomy in the First Degree, Rape in the First Degree, Attempted Rape in the First Degree, Rape in the Third Degree, and, Assault in the Third Degree.

Each family member took the stand at trial and testified concerning the reign of terror under which they had lived. Each testified concerning beatings, kickings, and petitioner's other fear inducing activities. One example is repeated testimony that the petitioner beat a puppy to death with a hammer. A complete view of the record shows a sadistic reign, wherein no one reported the on-going crimes to police because each family member was convinced that the petitioner would kill, as he said that he would.

The wife and ex-wife, both lived with the petitioner, who had single-handed

1

decided that this was how everyone should live.  Each woman described extensive beatings and forced sexual activities.  Each testified concerning the petitioner's threats to kill them and their relatives, if the women disobeyed him.  The years of abuse came to a head one night when, after sexually abusing his wife and ex-wife, the petitioner repeatedly raped and sodomized his fourteen year old daughter. He fell asleep and together the women got up enough courage to call police.

The petitioner's complete control was evidenced by his reaction when he was told that his family had reported him to the police.  He was amazed.  He said that he did not know that they had it in them.

The petitioner was granted a jury trial.  According to the petitioner, the sexual activities with his wife and ex-wife was all consensual.   He denied repeatedly kicking and beating family members, and, he denied having sex with his daughter, Crystal. The defense counsel vigorously cross-examined each witness, but no one was impeached.

In spite of the fact that there was no longer proof of the beatings and kickings, which had taken place over a period of time, proof of petitioner's guilt was overwhelming.  One needs only to look at the minute detail in his daughter's statement to police. She discusses step by step what her father did and what he said.  It has a strong ring of truth.  In addition, some of her testimony is corroborated by family members who overheard portions of the sexual activities.  Equally important, while the petitioner refused to talk with police, the record shows that he did willingly talk to the child

protective worker.  He ultimately admitted to her that he may have been so drunk that he could have molested his daughter, Crystal.  It was merely a "possibility".

Significant testimony was elicited at trial, from one of petitioner's jail mates, Tony Arnold (p.548).  He testified that while they were in jail together the petitioner attempted to hire him to kill both petitioner's wife and ex-wife.  Petitioner did not want the women to testify against him at trial (p.p.549-550).  Mr. Arnold said that the petitioner offered to pay him one hundred thousand dollars.  If the jury credited this testimony, this was further proof guilt.

Upon appeal the petitioner argued, among other things, that prosecutorial misconduct denied him a fair trial, he had ineffective assistance of state trial counsel, his conviction was against the weight of the evidence, and, he raised six other claims.  See appendix "E", page 11.  Nevertheless, the Fourth Department unanimously affirmed his conviction, and, the New York State Court of Appeals denied leave to appeal.  He was sentenced to a combination of concurrent and consecutive indeterminate and determinate terms of imprisonment that aggregated a sixty year maximum.

The petitioner now seeks federal habeas corpus relief, claiming: (1) prosecutorial misconduct; (2) ineffective assistance of state trial counsel; (3) he claims that his 48 count indictment was improper; and, he claims that (4) his statements to the caseworker were taken in violation of this *Miranda* rights.  For reasons set forth below, none of the pro se petitioner's claims can serve as the basis for granting federal of habeas corpus relief.

3

*Point I.*
*Standard Of Review*

To prevail under 28 U.S.C., section 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act (AEDPA") 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of th evidence presented in state court.  See 28 U.S.C., section 2254(d)(1), (2); *Williams v. Taylor,* 529 U.S. 362, 375-76 (2000).

*State Review On Merits*

Each of the claims which the petitioner now raises in his motion for a federal writ was reviewed and decided in the Fourth Department.  Three of petitioner's four federal habeas corpus claims were reviewed and denied upon the merits. One claim was denied based upon state procedural grounds.  The procedurally barred claim must be denied, for reasons set forth in Point II. below.  Here, we focus upon those claims which were decided on the merits in state court.

In response to petitioner's prosecutorial misconduct claim, the Fourth Department said that it rejected that contention.  The Court added that the prosecutor's opening and closing statements were not "so egregious as to deprive defendant of [his right] to a fair trial".  The Fourth Department cited relevant state law.  See appendix "R", page 221.

4

In response to petitioner's ineffective assistance of state trial counsel claim, the Fourth Department said , "...We also reject the contention of defendant that he received ineffective assistance of counsel...".

In response to petitioner's claim that his 48 count indictment was inflammatory and prejudicial, the Fourth Department said, "...Defendant's contention that the language in the indictment was inflammatory and prejudicial is not preserved for our review".

In response to petitioner's claim that statements were taken in violation of his Fifth Amendment right to remain silent and in violation of *Miranda*, the Fourth Department said, "...the caseworker was not required to advise defendant of his *Miranda* rights before speaking with him..."  See appendix, "R", pages 221-222.

For those claims reviewed and decided on the merits in state courts, no federal writ can be granted unless petitioner can show by 'clear and convincing' evidence that the state court, in rendering its decisions, caused 'unreasonable' error.  Here, the petitioner disagrees with the state court's determinations.  However, he has failed to show 'unreasonable error'.  Therefore, no federal writ can be granted.

Considering the stringent standard of review in federal habeas corpus cases, and, considering all reasons stated below, petitioner has failed in his burden of proof.  Accordingly, no federal habeas corpus can be granted.

*Point II.*
*As To Some Claims The Petitioner Has*
*Failed To Exhaust State Remedies, Or,*
*Created State Procedural Default.*

Although petitioner raised nine claims in the Fourth Department, he only raised three of those claims in the highest state court, the New York State Court of Appeals. The only three claims raised properly in the highest state court were: (1) petitioner's conviction was against the weight of the evidence; (2) statements to the child protective worker should not have been admitted at trial; and, (3) ineffective assistance of state trial counsel. Therefore, these are the only claims which have been "fairly presented" in state court, and, exhausted.  All other claims must be barred based upon the failure to exhaust state remedies, or, based upon state procedural default.

*Exhaustion*

All state remedies must be exhausted before federal habeas relief is pursued.  See 28 U.S.C., section 2254(b)(1)(A).  A habeas petitioner bears the burden of proving the exhaustion of state court remedies, see *Colon v. Johnson*, 19 F. Supp.2d 112, 120 (S.D.N.Y. 1998).  Exhaustion requires presentation of the claim to the highest state court from which a decision can be obtained.  *Daye v. Attorney General of the State of New York*, 696 F.2d 186, 190 n.3 (2d Cir. 1982)., *cert. denied,* 464 U.S. 1048 (1984).  In the present case, petitioner failed to exhaust state remedies in relation to his federal habeas corpus claims, *ground one, and three*, i.e., prosecutorial misconduct, and, that his 48 count indictment was inflammatory and prejudicial.  We do not waive the exhaustion

6

requirement as to either of these claims.

Petitioner does not claim that his appellate counsel rendered ineffective assistance. This is significant because appellate counsel's decision not to specifically raise these three claims in the highest state court, implies that these claims are not strong.  In any event,  as a general rule, the habeas petition should be dismissed if the prisoner has not exhausted available state remedies.  See *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S. Ct. 2546, 2554-55 (1991). Under the mixed-claim doctrine enunciated in *Rose v. Lundy,* 455 U.S. 509, 518-520, 109 S.Ct. 1198 (1982) when one has exhausted and unexhausted claims, one possibility is that the petition may be dismissed. Accordingly, we respectfully suggest that the petitioner's habeas corpus petition be dismissed.

In the alternative, we recognize that under the Antiterrorism and Effective Death Penalty Act of 1966 ("the AEDPA"), a federal court is permitted to deny a state prisoner's habeas corpus petition on the merits of the claims for which the prisoner has exhausted available state remedies, even though the petition contains unexhausted claims. 28 U.S.C., section 2254(b)(2).  However, a failure to timely exhaust state remedies will result in procedural default of the claims.  *Washington v. James*, 996 F.2d 1442, 1447 (2d Cir. 1993), *cert. denied*, 510 U.S. 678 (1994); *Jordan v. Lefevre*, 206 F.3d 196, 198-99 (2d Cir. 2000).

We also note that the federal habeas corpus statute does not require exhaustion of state court remedies when it appears that "there is an absence of available state corrective

process" or "circumstances exists that render such process ineffective to protect the rights of the applicant." 28 U.S.C., section 2254(b)(1)(B)(I).   Here, the petitioner has taken advantage of his one direct appeal to the Fourth Department and to the New York State Court of Appeals.   In addition, he has brought a CPL 440.10 collateral motion in state court.   Any claim that he has failed to raise, as a practical matter, can no longer be reviewed in state court. Petitioner is procedurally barred.

In view of the fact that the petitioner is now in effect precluded from further state court review, his claim may be deemed exhausted for federal habeas corpus purposes. Accordingly, if the petitioner can show 'cause and prejudice' or, 'a fundamental miscarriage of justice', he may receive federal habeas corpus relief.   This same standard of proof is required for petitioner's procedurally defaulted claim.

*Procedurally Defaulted Claims*

Three of petitioner's claims are technically defaulted because state courts have reviewed them on the merits.   Petitioner has no remaining avenues for further state appellate review.   The fourth claim was denied directly by state courts, based upon petitioner's failure to preserve the issue for state appellate review.   See appendix "R", page 222, stating that the defendant's contention that language in the indictment was inflammatory and prejudicial is not preserved for appellate review.   Accordingly, we will discuss all procedurally defaulted claims together.

In the case of procedural default, the "federal courts may address the merits of a

claim....only upon a showing of cause for the default and prejudice to the petitioner," *Bossett,* 41 F.3d at 829, or if the "failure to consider the federal claim will result in a fundamental miscarriage of justice," *Harris v. Reed,* 489 U.S. at 262. "Cause" for a procedural default may exist where a petitioner can show that "the factual or legal basis for a claim was not reasonably available to counsel, ....some interference by officials made compliance impracticable,...[or] the procedural default is the result of ineffective assistance of counsel." Murray v. Carrier, 477 U.S. 478, 488 (1986)(internal quotation marks and citations omitted). In the present case, the petitioner claims ineffective assistance of state trial counsel. However, he does not claim ineffective assistance of state appellate counsel. Therefore, appellate counsel's choice not to raise certain claims in the highest state court is not "cause" for petitioner's procedural default.

Nor has petitioner shown "prejudice" related to the procedurally defaulted claims. Indeed, proof of petitioner's guilt was overwhelming. There is little likelihood that any of the defaulted claims, if raised in the highest court, would have given the petitioner a more favorable result.

Finally, the "fundamental miscarriage of justice" exception to procedural bar has been interpreted by the Supreme Court to mean "actual innocence" and is found only in the most extraordinary case. See *Murray,* 477 U.S. at 496. Clearly, this exception does not apply.

In view of the fact that the petitioner has failed to meet his standard of proof in

relation to each of his defaulted claims, each of his four habeas corpus claims must be dismissed.

*Point III.*
*No Writ Can Be Granted Based*
*Upon Prosecutorial Misconduct*

Pro se petitioner's unexhausted first habeas corpus ground is that he was denied a fair trial by pervasive prosecutorial misconduct.  He adds that supporting facts on this issue are more fully demonstrated in an accompanying "Addendum to Petitioner".  Petitioner states that the addendum is enclosed with his petition.  However, the only information attached appears to be various decisions and reports.  I see no annexed memorandum elaborating petitioner's points.  Thus, it appears that the petitioner's moving papers are insufficient to state a viable claim upon which federal habeas corpus relief can be granted.

In view of petitioner's pro se status, I checked his counsel's state appellate brief.  Prosecutorial misconduct is the first point raised therein.  Appellate counsel complained that the People waited until two weeks prior to trial before telling the petitioner that a jail house informant would be used at trial.  Petitioner's appellate counsel claimed that the prosecutor's opening statement was over zealous, and caused undue prejudice to the petitioner. Defense counsel argued that the prosecutor improperly bolstered testimony, and, made improper comments upon summation.

10

The Fourth Department fully reviewed petitioner's prosecutorial misconduct claim. In its memorandum unanimously affirming petitioner's conviction, the Fourth Department said:

> "...Defendant contends that he was deprived of his right to a fair trial based on alleged prosecutorial misconduct.  We reject that contention.  Contrary to defendant's contention, the comments of the prosecutor in her opening and closing statements were not 'so egregious as to deprive defendant of [his right to] a fair trial (*People v. Eldridge*, 288 AD2d 961, *lv. denied* 91 N.Y.2d 926)'."  See appendix "R", page 221.

The Fourth Department's reasoned decision was based upon the Court's view of the facts, as related to New York State Law.  Upon habeas corpus review, those facts must be presumed correct.  29 U.S.C.A., section 2254(e)(1).  In addition, to the extent that the state court's decision was based upon state law, that was an adequate and independent state basis for the court's findings.  It is well established that a "state prisoner is entitled to relief under 28 U.S.C., section 2254 only if he is held in custody in violation of the Constitution or laws or treaties of the United States".  *Engle v. Isaac,* 456 U.S. 107, 119 (1982).  A petitioner may not obtain habeas relief if the decision of the state court rested "on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 2553-54 (1991).

As elaborated generally in a prior point, since state courts have reviewed this claim on the merits, and, petitioner has failed to show by clear and convincing evidence that the

state court decision was based upon unreasonable error, the amended AEDPA prevents federal habeas corpus relief.

*Habeas Corpus Review*

The test for an alleged denial of due process based upon prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. *Smith v. Phillips,* 455 U.S. 209 (1982). To deny a petitioner due process based on a prosecutorial statement, the statement has to have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 182 (1986) (no denial of due process where the overwhelming weight of the evidence was so heavy against the petitioner that it "reduced the likelihood that the jury's decision was influenced); *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1990)(prosecutorial misconduct will support a writ of habeas corpus only when it is so "egregious [as to] amount to a denial of constitutional due process".  No matter how improper the prosecutor's comments, the only concern of the court in reviewing a claim of prosecutorial misconduct on a habeas petition is the fundamental fairness of the trial. *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974).

In the case at bar, state courts determined that, as a matter of fact, the petitioner was not denied a fair trial based upon prosecutorial misconduct.  Petitioner has not shown otherwise, by clear and convincing evidence.  Therefore, no federal writ can be granted based upon petitioner's claim of prosecutorial misconduct.

*Exhaustion/ Procedural Default*

A final consideration, in relation to petitioner's prosecutorial misconduct claim, is whether or not the petitioner properly exhausted state remedies, or, created state procedural default by failing to properly raise this claim in the highest state court.

There can be no debate that the petitioner properly raised his prosecutorial misconduct claim in the Fourth Department.  However, in viewing his letter to the New York State Court of Appeals, it appears that the petitioner failed to "fairly present" his claim there.  See appendix "S", page 223.  There, petitioner mentions by name issues which he wishes to raise in the New York State Court of Appeals.  However, he does not specifically mention prosecutorial misconduct.  He merely says that other arguments will be set forth in more detail.

We maintain that this manner of raising his claim in the highest state court is insufficient, and, accordingly, petitioner has failed to exhaust state remedies as he has failed to "fairly present" his prosecutorial misconduct claim in the highest state court.  We do not waive the exhaustion requirement.

Our alternative argument is that the petitioner's prosecutorial misconduct claim is procedurally defaulted. A procedurally defaulted claim can only be reviewed on habeas corpus if the petitioner made an adequate showing of "cause and prejudice" or of a "fundamental miscarriage of justice".  Here, petitioner has failed to meet either standard of proof, and, no federal writ can be granted.

*Point IV.*
*No Federal Writ Can Be Granted Based*
*Upon Ineffective Assistance Of Counsel*

Ground two of pro se petitioner's motion for a federal writ states that a writ must be granted because of prosecutorial misconduct.  More specifically, petitioner claims that his state trial counsel was ineffective because: (1) counsel improperly failed to put on a defense; (2) counsel had insufficient information concerning the law; (3) counsel failed to properly marshall and investigate; (4) counsel failed to consult with a medical expert; and, (5) counsel prevented petitioner from confronting his accusers.  All five allegations are covered in sub topics below.

*Standard For Ineffective Assistance*

A claim of ineffective assistance of counsel must be analyzed according to the standards set forth in the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). This is a heavy burden of proof for the petitioner, as evidenced by the Second Circuit Court of Appeals' holding in *Pavel v. Hollis*, 261 F.3d 210 (2d Cir. 2001). There, the Court says that to establish that his conviction was in violation of his right to effective assistance of counsel, a claimant must satisfy both prongs of the two part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).  This test is "rigorous," *Luidstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001), and "highly demanding," *Kimmelman v. Morrison*, 477 U.S. 365, 382, 106 S.Ct. 2574 (1986).  To

satisfy the *Strickland* standard, a claimant must show that "counsel's performance was deficient" and "that the deficient performance prejudiced the defense".

Here, as a threshold consideration, the Fourth Department reviewed petitioner's ineffective assistance of counsel claim and rejected petitioner's claim.  See appendix "R", page 222.  The New York State Court of Appeals reviewed petitioner's ineffective assistance of counsel claim and denied leave to appeal.  In addition, the record supports state courts' determinations that the petitioner had effective assistance of counsel.

*Counsel Failed To Put On Defense*

Pro se petitioner claims that his counsel failed to put on a defense.  However, contrary to petitioner's claims, there was a clear defense.  If one reviews defense counsel's opening statement, starting at page 228 of the trial transcript, counsel states that, "...the issue is he didn't do it, he didn't do any of it.  That's what the proof is going to state in this case."  This theory of defense was corroborated in defense counsel's summation. Defense counsel argued again that the testimonies against the petitioner were not true.  He argued no seaman, no DNA, no physical acts from 17 sexual charges [p.612].  This information should preclude further review of petitioner's claim that his counsel was ineffective, because he failed to assert a defense.  Nevertheless, for the sake of thoroughness, we will further explore petitioner's claim.

Petitioner states generally that his state trial counsel's preparation and quality of representation was inadequate.  He states that his counsel went right for dismissal, rather

than putting on a defense, because counsel was under the incorrect assumption that the prosecution was required to prove the element of penetration in order to sustain a conviction for Sodomy in the First Degree.  He cites trial transcript page 652, lines 8-12 [hereinafter, page number only].

The record shows that the petitioner is mistaken.  Page 651 of the trial transcript shows that the prosecutor had given his closing statement.  Out of the presence of the jury, the defense counsel moved for a trial order of dismissal, based upon that summation. The Court denied defense counsel's motion.  For jury charge purposes, court and counsel went on to explore the propriety of the language, which the prosecutor had in her indictment.  It was during that jury charge discussion that the defense counsel sought clarification from the Court on the issue of sodomy and penetration [p.652].  There was nothing improper in counsel's discussion with the Court.  No jurors heard the discussion, and, the petitioner has failed to show how he was prejudiced by counsel's communication with the Court.

Petitioner's further argument that his counsel's lack of knowledge concerning sodomy and penetration prevented counsel from evaluating the facts is not evidenced by record.  The facts had already been presented during the trial.  It was for the jury to evaluate those facts, once it heard the Court's explanation of the law.  Court and counsel agreed that there had been testimony concerning penetration [p.651].  Thus, petitioner cannot reasonably claim that 'but for' counsel's error the outcome of his trial would have

been more favorable to him.

Nor is it clear to us why the petitioner states that his counsel failed to put on a defense.  The above transactions occurred after both the prosecutor and defense attorneys had presented their cases, and, after both counsel had offered their summations.  It was time to charge the jury, not the time for either counsel to offer further proof.

Most important, the petitioner has not stated what viable defense his counsel failed to assert.  Nor has the petitioner shown how this clarification concerning penetration and sodomy is evidence that his counsel lacked trial strategy.

*Insufficient  Legal  Information And*
*Failure To Investigate Documents*

Petitioner's next claim in support of his alleged ineffective assistance of state trial counsel is that counsel failed to correctly research, investigate, marshall, research evidence.  He alleges that there was a broad range of exculpatory evidence which should have been presented at trial.  Petitioner makes general reference to physical evidence, medical evidence, forensic evidence, visual evidence, tactile evidence, ALS examinations, New York Sexual Assault Kits, and DNA results.  However, he fails to show specifically what was missing from each of these reports.

Nor does the petitioner explain how he has concluded that his state trial counsel incorrectly researched, these various documents.  The record shows that the documents, which the petitioner contends his trial attorney failed to review/ research, were a part of the trial file, and  readily available to his trial counsel.

17

The record also shows that the defense counsel was well aware of the contents of such reports.  He used the contents skillfully in the petitioner's favor.  Defense counsel cross-examined the Peoples' witnesses concerning  various test, which were reflected in the documents that the petitioner contends counsel failed to review [p.p. 301-303].  Counsel made reference to the various documents during his summation.  He argued about the alleged inadequacies of the police reports [p.605].  He discussed physical evidence and medical evidence, or, the lack thereof [p.p.611-616].  Counsel argued the lack of DNA evidence [p. 612].  He made a point of telling the jury that the lab found nothing![p.612].  Defense counsel told the jury to look at the medical record [p.p.612-613].  In sum, the record shows that, not only did defense counsel review each of the documents, he remembered what was in the documents, and, during summation he used that evidence, or lack thereof, in the petitioner's favor.

To the extent that the pro se petitioner argues that his counsel failed to consult with an expert, the record shows that this was connected with defense counsel's  trial strategy.  The defense counsel requested and received written assurance that the prosecutor would not be calling an expert at trial.  Counsel relied upon that representation, and, later used it to the petitioner's advantage when the prosecutor, contrary to written representation, called a doctor to testify at trial.

While defense counsel's representation was not perfect, petitioner received a fair trial.  Furthermore, in considering the facts of this case, and the petitioner's posture at

trial, the absence of an expert in petitioner's defense made little difference.  As to petitioner's sex with his wife and his ex-wife, petitioner claimed that it was consensual. Therefore, the operation of the rape kit was somewhat irrelevant.

In regards to the alleged sexual acts with his daughter, the petitioner's position at trial was that he never did any of the sexual acts.  Counsel knew that the physical evidence gave no information pointing to the petitioner.  Thus, it cannot be reasonably said that, 'but for' defense counsel's failure to bring in an expert, the outcome of the case would have been more favorable to the petitioner.  Petitioner cannot show that his trial attorney failed to properly use test results.  Accordingly, petitioner cannot bear his heavy *Strickland* burden of proof.

### Counsel Failed To Call Experts

This was covered in the prior sub paragraph.  Upon hind sight perhaps in a perfect world  petitioner's trial counsel would have called a medical expert.  However, proof against the petitioner was overwhelming, and, given the facts of this case, it is not clear what a defense expert could have added to this case.  Petitioner has the burden of proof here.  However, he does not state what it is that a defense expert could have added, which would have made a difference in this case.  In addition, the defense counsel had a letter from the prosecutor, stating that the People would not be calling an expert witness [p.p.525, 529].  Accordingly, court and counsel made adjustments in the trial so that the petitioner would not be unduly prejudiced by the physician's testimony [p.526].

The question in relation to two victims was not whether sexual activities occurred. It was supposedly a matter of consensual sex.   A doctor could have added nothing, unless he was present when the sexual activities occurred.  As to the petitioner's daughter, it is not clear what the petitioner believed his own doctor would have testified to, which would have made a difference.

In any event, the petitioner's counsel raised very good objections to the Peoples' physician testifying [p.p. 531-535].  Ultimately, the Court agreed with the petitioner's counsel, and, the People's physician was disqualified from testifying [p.536].  Petitioner has failed to show that the limited information initially given by the doctor prejudiced him. Accordingly, the he has again failed his *Strickland* burden of proof.


*Point V.*
*Petitioner Has No Valid Objections To*
*His Forty-Eight Count Indictment*

Ground three of petitioner's motion for a federal writ of habeas corpus states that the petitioner was substantially prejudiced by the 48 count indictment, which was inflammatory and prejudicial due to its duplicitiousness.

This allegation was raised and fully briefed in petitioner's state appellate brief, under Point V.  See appendix "E", page 41.  In response, the People in their Fourth Department brief, pointed out that, as for petitioner's claim of duplicity, the trial court was correct in its ruling that the indictment alleges only a single act of rape, incest, or

sodomy per count, during each of the respective time periods during which the crimes were alleged to have occurred.  The People cited *People v. Keindle*, 68 N.Y. 2d 451 (1986). Nor is the indictment multiplicitious or identical as claimed by the defendant, because no two separate counts charge the same crime. *People v. Kindlon*, 217 A.D.2d 793 (3ʳᵈ Dept. 1995). See appendix "O", page 208.

The Fourth Department stated, in its memorandum unanimously affirming petitioner's  conviction, that the  petitioner's contention that the language in the indictment was inflammatory and prejudicial was not preserved for appellate review. Accordingly, the Fourth Department denied the claim upon procedural grounds.  The Court cited New York State Penal Law, section 470.05[2].   The Court furthermore declined to exercise its power to review the issue as a matter of discretion in the interest of justice.  See appendix "R", page 222.

Whether one considers the state law cases cited by the People in their state appellate brief, or considers the Fourth Department's cited state procedural bars, no federal writ can be granted based upon this unpreserved claim.  As to the cited state law cases, no federal writ can be granted based upon state law error.  *U.S. ex. rel. Nistler v. Chrans,* 720 F. Supp. 115.  In regards to the Fourth Department's stated reasons for denying this claim, a petitioner may not obtain habeas relief if the decision of the state court rested "on a state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546,

2553-54 (1991).

*Point VI.*
*No  Federal  Writ  Can Be Granted Based*
*Upon Petitioner's Claim That Statements*
*Were Taken In Violation Of Miranda Rights*

Pro se petitioner's final claim is that a federal writ should be granted because

statements were taken from him in violation of his Fifth Amendment right to remain

silent, and in violation of his Miranda rights.  However, the Fourth Department found this

claim to be without merit.  The Court said:

> "...Defendant further contends that his statements to a
> caseworker were inadmissible because the caseworker
> was acting as an agent of police and did not advise him
> of his *Miranda* rights.  That contention lacks merit.  The
> filing of a child abuse petition does not trigger the right
> to counsel, and the caseworker was not required to advise
> Defendant of his *Miranda* rights before speaking to him
> See *People v. Brooks,* 184 AD2d 274, 275-276, *lv. denied*
> 80 N.Y.2d 901).

*Independent And Adequate State Law*

A petitioner may not obtain habeas relief if the decision of the state court rested on

a state law ground that is independent of the federal question and adequate to support a

judgment.  See *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 2553-54 (1991).

Here, in rendering its decision, the Fourth Department cited State law, which is an

adequate and independent bases for denial of petitioner's *Miranda* claim.  According to

*People v. Brooks*, *supra,* evidence supported a determination that the defendant's

statements to the caseworker assigned to investigate defendant's suspected child abuse was freely and voluntarily given, even though the caseworker did not advise defendant of his *Miranda* rights; filings of child abuse petition does not trigger defendant's right to counsel and the caseworker was not engaged in law enforcement activity.  Other New York cases have reached the same conclusion.  In *People v. Davila*, 223 AD2d 722, 637 N.Y.S.2d 2000 (1996), the reviewing appellate court found no *Miranda* violation when a case worker interviewed the defendant about sexual crimes.  The court said that the defendant was not in custody when he met with the caseworker at a public school.  The court said that the caseworker was not law enforcement official, nor an agent of such a person.  And, the court determined that there was no indication that the statements were involuntary.

A New York case with facts similar to those in the present case, is *People v. Greene*, 189 Misc.2d 276, 730 N.Y.S.2d 697 (N.Y.Co.Ct., 2001).  There, the social worker conducted a face to face interview with the defendant, who was charged with numerous counts of rape, sexual abuse, and incest.  The reviewing state Court determined that the social worker was not an agent of law enforcement, and thus, inculpatory statements voluntarily made by defendant to the social worker were admissible in defendant's prosecution; even though the defendant was represented by counsel, and was being held in a jail interview room.  The social worker interviewed the defendant independent of the law enforcement in response to a report of sexual abuse made to Child

23

Protective Services (CPS).  The reviewing appellate court furthermore determined that social workers are not required to give *Miranda* warnings to interviewees.  U.S.C.A., Const. Amend. 5; New York State McKinney's Criminal Procedure Law (CPL), section 710.30.

In the final analysis, here, the Fourth Department determined that there was no *Miranda* violation because, under state law, this case worker was not acting as an agent of police, and, caseworkers are not required to read a defendant *Miranda* rights before speaking with him.

Petitioner has failed to show by clear and convincing evidence that this state court decision was based upon unreasonable error.   Therefore, in addition to the preclusion of federal habeas review, based upon an adequate and independent basis, petitioner is further prohibited from federal habeas corpus review by AEDPA standards.  No writ can be granted.

## CONCLUSION

The petition for habeas corpus should be dismissed.

Date: November 10, 2005                    Respectfully submitted,

                                           MICHAEL C. GREEN, ESQ.
                                           District Attorney of Monroe County
                                           Suite 832
                                           Ebenezer Watts Building
                                           Rochester, New York 14614

                                           *Loretta S. Courtney* , ADA

                                           By: LORETTA S. COURTNEY
                                           Assistant District Attorney
                                           Phone: (585) 753-4645

cc: Shawn Jackson
      Robert A. Colon, AAGIC/ Rochester