IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

SHAWN A. JACKSON,

                          Petitioner,                  **DECISION AND ORDER**
                                                                                 No. 05-CV-0571(VEB)

      -vs-

JAMES T. CONWAY, Superintendent, Attica
Correctional Facility,

                          Respondent.
_____

**I.     Introduction**

        Shawn L. Jackson ("Jackson" or "Petitioner") filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his detention state custody as the result of a judgment in Monroe County Court convicting him after a jury trial of 47 counts, including multiple counts of sodomy in the first degree (New York Penal Law former § 130.50(1)), assault in the third degree (New York Penal Law ("P.L.") § 120.00(1)), sexual abuse in the first degree (P.L. § 130.65(1)), rape in the first degree (P.L. § 130.35(1)), rape in the third degree (P.L. § 130.25(2)), sodomy in the third degree (P.L. former § 130.40(2)), and incest (P.L. § 255.25). The alleged sexual assault victims were his adolescent daughter, current wife, and former wife. Petitioner was also convicted of physically assaulting his elder son.

        During the pendency of the habeas proceeding, the Court appointed counsel from the CJA panel to represent Petitioner and held an evidentiary hearing. The Court issued a Decision and Order on conditionally granting the writ on the following claims (1) ineffective assistance of

trial counsel with regard to the failure to retain a medical expert witness in connection with the convictions involving Petitioner's daughter;(2) a *Miranda* error, which was not harmless as to the convictions involving Petitioner's daughter; and (3) the claim of prosecutorial misconduct as to all of the convictions involving all of the victims. The Court granted a certificate of appealability on the following claims: the *Miranda* error was not harmless with regard to the convictions involving the wife, ex-wife, and son; trial counsel was ineffective in failing to introduce the available laboratory and DNA reports at trial and that this deficiency prejudiced the defense with regard to the sexual assault convictions involving the daughter, wife, and ex-wife; ineffective assistance of trial counsel in failing retain a medical expert witness with regard to the ex-wife. The Court denied the remaining claims and denied certificates of appealability as to them.

Respondent was ordered to vacate Petitioner's convictions unless within 90 days of the date of entry, unless the Monroe County District Attorney's Offices commenced re-prosecution of Petitioner. The Court stayed judgment pending completion of any appellate proceedings. The appointment of Petitioner's habeas counsel under the CJA was continued for purposes of further proceedings in this matter.

As of this writing, Petitioner's habeas counsel has filed his appellate brief and Oral Argument Statement pursuant to the Second Circuit's Local Rule 34.1(a). *See* Docket Nos. 113 & 114 in *Jackson v. Conway*, No. 11-922-pr (2d Cir.) .

Proceeding *pro se,* Jackson filed a motion for release on bail. *See* Docket Nos. 69, 70 & 71.  Respondent, pursuant to this Court's Order (Docket No. 72), filed a response (Docket No. 74) in opposition to Jackson's motion. Jackson filed a reply affirmation (Docket No. 75). For the reasons that follow, the Court declines to order Jackson released on bail.

**II.     Discussion**

Jackson, who maintains his innocence, asserts that he is likely to be successful on appeal and therefore bail is necessary to make the habeas remedy effective. Jackson notes that he intends to devote himself to caring for his aging mother and father who live in Rochester, New York, and states that he is the only one of his siblings who is able to do so. Jackson also asserts that the stigma attached to his convictions creates the possibility of danger to him within the prison system. He states that he has a perfect institutional record and has proven that he can be a law-abiding citizen if released.

Respondent disputes Jackson's assessment of the strength of his case on appeal, noting the recent Supreme Court decisions, *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 786 (2011); *Cullen v. Pinholster*, __ U.S., 131 S. Ct. 13881, 1401 (2011); and *Premo v. Moore*, __ U.S. __ 131 S. Ct. 733, 740 (2011).  Respondent argues that these decisions doom Jackson's appeal because they require more deference to the state courts under the Anti-Terrorism and Effective Death Penalty Act. Respondent also asserts that Jackson has failed to prove he is not a flight risk, and that there is a high probability that he will kill or injure the victims in this matter if he were released. Respondent notes that a fellow inmate testified for the prosecution that Jackson offered to pay him to have his (Jackson's) wife and ex-wife killed; Jackson asserts that informant is lying.  Respondent also cites to the testimony of the victims, who testified that Jackson used threats and acts of violence to keep them from seeking help.  Respondent  points out that Jackson is not eligible for parole until 2043 (his maximum expiration date is 2050) and notes that the State has a legitimate interest in keeping Jackson in custody since the remaining time to be served is quite lengthy.  As Respondent notes, this Court, by implementing a stay of

the judgment pending appeal, elected not to release Jackson from custody. Respondent argues that his decision should stand as it is presumed correct. *See* Respondent's Affirmation at 3 (citing Fed. R. App. P. 23(d); *Hilton v. Braunskill*, 481 U.S. 770, 774, 777 (1987) ("There is presumption in favor of enlargement of the petitioner with or without surety, but it may be overcome if the traditional stay factors tip the balance against it. A court reviewing an initial custody determination pursuant to [Federal] Rule [of Appellate Procedure] 23(d) must accord a presumption of correctness to the initial custody determination made pursuant to [Federal] Rule [of Appellate Procedure] 23(c), whether that order directs release or continues custody, but that presumption, too, may be overcome if the traditional stay factors so indicate.").

When this Court entered its Decision and Order granting relief, it did consider the traditional criteria regulating whether a stay of a district court decision should be granted pending appeal, which are (1) the likelihood of the appellant's success on the merits; (2) whether the party seeking a stay will suffer irreparable injury if a stay is not issued; (3) whether the party opposing the stay will incur substantial injury will if a stay is issued; and (4) the public interests that may be affected, including the risk of flight and danger to the public. *Hilton*, 481 U.S. at 776; *accord*, *e.g.*, *Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002).

The Supreme Court in *Hilton* acknowledged that the weight to be accorded to each of the factors necessarily will vary from case to case: "Since the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a rigid set of rules." 481 U.S. at 777. For example, where a request is made to stay the granting of habeas relief, "the possibility of flight should be taken into consideration. . . . [I]f the State establishes that there is a risk that the prisoner will pose a danger to the public if released, the court may take that factor

into consideration in determining whether or not to enlarge him. The State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal is also a factor to be considered; it will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served." *Hilton*, 481 U.S. at 777. The Supreme Court specifically rejected the habeas petitioner's argument that "matters of 'traditional state concern' such as the petitioner's danger to the community ought not to be considered in determining whether a successful habeas petitioner should be enlarged pending appeal." *Id.* at 778. Rather, "[u]ntil the final determination of the petitioner's habeas claim, federal courts must decide applications for stay of release using factors similar to those used in deciding whether to stay other federal-court judgments[,]" *id.*, which include the likelihood of harm to the public. The Supreme Court explained,

> Unlike a pretrial arrestee, a state habeas petitioner has been adjudged guilty beyond a reasonable doubt by a judge or jury, and this adjudication of guilt has been upheld by the appellate courts of the State. Although the decision of a district court granting habeas relief will have held that the judgment of conviction is constitutionally infirm, that determination itself may be overturned on appeal before the State must retry the petitioner. This being the case, we do not agree that the Due Process Clause prohibits a court from considering, along with the other factors that we previously described, the dangerousness of a habeas petitioner as part of its decision whether to release the petitioner pending appeal.

*Hilton*, 481 U.S. at 779; *see also Painten v. Commonwealth of Mass.*, 254 F. Supp. 246, 249 (D. Mass 1966) (finding that habeas petitioner's potential danger to the community if released on bail was factor warranting "serious consideration" in bail determination) (citing , *inter alia*, *Carbo v. United States*, 82 S. Ct. 662, 666, 7 L.Ed.2d 769, 774 (1962) ("If, for example the safety of the community would be jeopardized, it would be irresponsible judicial action to grant bail.")).

The Court recognizes that competing with the public's interest in having the State's judgments enforced is the public's "compelling interest in the State not continuing to incarcerate individuals who have not been accorded their constitutional right to a fair trial," for "[t]he federal writ of habeas corpus monitors the State's compliance with constitutional law[,] [which], in turn, inspires the public's confidence in the criminal justice system." *House v. Bell*, 3:96-cv-883, 2008 WL 972709, at *3 (E.D. Tenn. Apr. 7, 2008) (declining to grant a stay of judgment where habeas petitioner had "been incarcerated for 22 years as the result of a trial which this court, as well as the Supreme Court of the United States, ha[d] determined to have been fundamentally unfair", and petitioner was wheelchair bound due to an advanced case of multiple sclerosis), (unpublished), *aff'd*, 276 Fed. Appx. 437 (6th Cir. 2008), *vacated in part on other grounds*, 2008 WL 2235235, (E.D. Tenn. May 29, 2008) (unpublished). However, in the present case, the Court finds that it would be irresponsible not to consider the possibility of danger to the public–in particular, the victims–if Jackson were released to the community. The Court has read the trial transcript carefully, and even discounting the jailhouse informant's testimony regarding a proposed conspiracy to commit murder, the four victims all testified consistently and credibly regarding Jackson's acts of violence and threats of harm if they contacted the authorities. The Court accordingly declines to modify Jackson's sentence until the Second Circuit has had an opportunity to address the constitutional challenges presented on appeal.

### III. Conclusion

For the reasons set forth above, Petitioner's motion for release on bail (Docket No. 69) is denied, and the stay of judgment shall continue until completion of appellate proceedings, as originally ordered by this Court.

**IT IS SO ORDERED.**

/s/ Victor E. Bianchini

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated:   December 19, 2011
         Buffalo, New York.